### BAIRD v. UNITED STATES.
### No. 2153.

District Court, W. D. Louisiana, Shreveport Division.

Jan. 31, 1933.

Herold, Cousin & Herold, of Shreveport, La., for plaintiff.

Philip H. Mecom, U. S. Atty., and Elmer A. Mottet, Asst. U. S. Atty., both of Shreveport, La., for the United States.

DAWKINS, District Judge.

This is a suit for the refund of the sum of $3,340.89, alleged to have been paid as income taxes for the year 1920, "which was in fact and law income for the year 1919." The claim rests solely upon the contention that as a matter of fact and law the income upon which the tax was paid was assessable for the year 1919.

The government insists that it was income for the year 1920, and further pleads estoppel, based upon the fact that the plaintiff returned it as such and paid his taxes thereon and did not file the claim for refund until limitations had run against the right to assess it for the year 1919.

The transaction out of which the money was received by plaintiff was a contract made on December 10, 1919, pursuant to which the funds were deposited in a bank to the credit of plaintiff. That contract stipulated that: "Baird has agreed to sell with full warranty of title, and the said Flannery has agreed to buy, on the terms, conditions and considerations hereinafter set out, the following described property:" (Here follows a description of an oil and gas lease.) In the second clause it further provided that: "The price of the said sale is the sum of $2,500,-000.00, which the said Flannery binds and obligates himself to pay in the manner and terms here set out  *  *  *." In the third clause it was stated that $500,000 was paid with the signing of the act, receipt of which was acknowledged, and the proposed purchaser "further binds and obligates himself to pay on or before the 8th day of February, 1920, to the said Baird, the further sum of $300,000.00," and this clause, in its second paragraph, further reads as follows: "Upon the failure of the said Flannery to make the said payment on or before the date above specified, the said Baird shall have the right and option, after giving the said Flannery fifteen days' notice in writing of his intention so to do, to declare the forfeiture of this contract and to retain the sums already paid, and any retention of said sums shall be in full liquidation and settlement of damages and in lieu of any other or further damages whatsoever which the said Baird, his heirs or assigns, might claim, and operate as a release and discharge of the said Flannery, his heirs and assigns, of and from any and all liability whatsover incurred under or by virtue hereof." The fourth paragraph recites that after the payment of $300,000 on February 8, 1920, thus making a total of $800,000 cash, Baird "shall execute to the said Flannery a good and sufficient deed to the property herein sold" for notes of the purchaser, consisting of five for the sum of $300,000 each, due thirty, sixty, ninety, one hundred and twenty, and one hundred and fifty days, respectively, after date of said deed, with the final payment of $200,000, represented by one note, due in one hundred and eighty days. They were to bear interest at 5 per cent. from date and to be secured by vendor's lien and mortgage upon the property conveyed. Paragraph 5 provides further that at any time after January 1, 1920, Flannery should have the right to make payment of the entire balance of the purchase price, with interest to date of payment, and to receive deed for the property; and in paragraph 6, that after the payment of the $800,000, or of the entire unpaid balance, Flannery should be entitled to credit for the proceeds of any oil run from the property from 7 a. m., Nov. 8, 1919, "and shall pay to the said Baird all sums expended by him for or on account of the development of the said property from and after said date."

There were other paragraphs not necessary to consider in this suit, but paragraphs 9 and 10 are quoted in full as follows:

"9. If at any time prior to the payment of the said sum of Eight Hundred Thousand Dollars ($800,000.00) the said Flannery should, without any payment at that time, desire the said Baird to execute a deed, then Baird agrees and obligates himself to do so, depositing the said deed in escrow in the American National Bank of Shreveport, with instructions to the said Bank to deliver the said deed to the said Flannery upon his full

compliance with all the conditions, stipulations and obligations hereinabove provided, that is to say, upon the completion of the payment of the said sum of Eight Hundred Thousand Dollars ($800,000.00) within the time hereinabove stipulated and upon his execution of the notes aforesaid, secured as above provided."

"10. This Agreement to bind the heirs, executors, administrators and assigns of the respective parties hereto."

The first question to be determined is as to whether or not the $500,000 or any part thereof paid and received on December 10, 1919, was income within the meaning of the tax law. It is conceded that the plaintiff's business was conducted on a receipts and disbursements basis. At the beginning, this necessitates a consideration of the effect and import of the second paragraph of section 3 of the contract of December 10, 1919, above quoted in full. The Louisiana Civil Code, art. 2463, declares:

"*When Earnest is ·Given*. But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to-wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double."

█ Without the second paragraph of article 3 of the contract, quoted in full above, it would evidence a clear and unequivocal promise to sell and agreement to buy on the terms named. This quoted clause could not become operative until the 8th of February, 1920, when the second payment of $300,000 was due, the failure of Flannery to pay the same, and the giving by Baird of fifteen days' written notice of his intention to declare the forfeiture. During this period of notice it would seem reasonably clear that Flannery could have prevented the forfeiture by paying the $300,000. The effect of this provision was to give Baird the right to do what Flannery or any one promising to purchase, where earnest is given, could do, that is, forfeit the earnest money and decline to perform. If it had been a giving of earnest, within the meaning of the Code, then from the beginning, the right would have existed, of either to decline to perform—Flannery by forfeiting the deposit, and Baird by returning it with a like amount. Civ. Code La. art. 2463. However, the parties made a different agreement, which they were at liberty to do, with regard to the forfeiture, by which the right was transferred to Baird to declare the forfeiture and to decline to perform.

The question of whether or not the deposit was earnest money or "to bind the trade" was one of intention, to be drawn from the whole instrument, and my conclusion is that it was not such in this instance. See Nosacka v. McKenzie, 127 La. 1063, 54 So. 351, and authorities therein reviewed.

█ On the other hand, I think this stipulation does affect materially the question of whether the payment of $500,000 could be said to be an unequivocal transaction involving the receipt of income subject to taxation at that time. It is evident that the plaintiff did not consider or treat it as such, for he returned it in 1921 as income for the year 1920, after he had instituted suit against Flannery in January of 1921, for the annulment of the contract because of the latter's failure to perform by paying the $300,000 due on February 8, 1920, and subsequent installments. Of course, the parties could not change the legal effect of what they did in December, 1919, by subsequent actions; but the manner in which they construed their agreement is of assistance in determining its meaning, if the latter is doubtful. But for the above-quoted provision in section 3 of this agreement, the receipt of the money in 1919, in my opinion, would have been income, notwithstanding the right of Baird under the Louisiana Code to resolve or have it set aside for nonperformance. The latter is a privilege accorded by law in all commutative contracts. But it was stipulated that he should have the right at a certain time to refuse further to perform—a special provision permitting him the sole option, of·determining whether he should keep the money and declare a forfeiture, instead of, as the law provides, returning it with a like amount for the privilege of withdrawing. It left the matter within his own conscience, subject to the lapsing of the required time and the failure of Flannery to do certain things, as to whether he would exercise the right. He, therefore, did not receive the money unconditionally, as in a normal transaction where part of the purchase price of property is paid in cash and the balance in deferred installments. His choice upon this score was not exercised until January, 1921, when he determined to disregard that option and sued for the dissolution of the contract, offering to return what had been received from Flannery, as he was required to do under the state law to have the agreement dissolved, as distinguished from a forfeiture. His own conduct in entering the money in a "suspense account" on his books, and putting it in the bank as an "option"

showed clearly that he did not intend to treat the matter as closed until it could be seen whether Flannery would make the payment of February 8, 1920. It is true that the money, or a good portion of it, was paid out by Baird, commencing in May, 1920, for the account of Flannery, pursuant to an agreement with the Sinclair Oil Company for certain tanks, etc., erected upon the property covered by the agreement of December 10, 1919, under which the funds in dispute were received. But, clearly, there was no conveyance of the property in this last-mentioned contract, nor was there any time thereafter when Flannery could have compelled its transfer for the reason that he never paid the $300,000 due February 8, 1920. Baird remained in control of the property at all times, developed it and received the proceeds of the oil. I am, therefore, constrained to hold that the Commissioner correctly treated the payment of $500,000 as a deposit, the right to retain which, on the part of Baird, was contingent upon either of two eventualities, both of which were to happen on or after February 8, 1920, to wit, first, the payment of the $300,000 by Flannery, or second, the forfeiture of the $500,000 by Baird after fifteen days' written notice. Of course, the latter could have, after that date, ignored both and sued for specific performance or the payment of the subsequent installments, but this right also did not arise until 1920, and was never exercised, as was true of the other two conditions subsequent, just mentioned.

It is not necessary to pass upon the other issues raised.

I, therefore, find that the plaintiff is not entitled to recover for the reason that the money paid was not assessable upon income for 1919. The demand will be rejected. Proper decree should be presented.